DAVID J. GALLO, ESQ. *(California Bar No. 127722)*
**LAW OFFICES OF DAVID J. GALLO**
12702 VIA CORTINA, SUITE 500
DEL MAR, CALIFORNIA  92014
Telephone: (858) 509-3652

Attorney for Plaintiffs,
JOEL M. CRAM, and
MINH D. NGUYEN, individually,
and on behalf of all others similarly situated

# UNITED  STATES  DISTRICT  COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL M. CRAM, and<br>MINH D. NGUYEN, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ELECTRONIC DATA SYSTEMS<br>    CORPORATION, a Delaware corporation,<br><br>    Defendants. | Civil Action Number:<br><br>**07-CV-1842 LAB (NLS)**<br><br><br>**NOTICE  OF  MOTION  AND PLAINTIFFS'  MOTION  FOR PRELIMINARY  APPROVAL  OF PROPOSED  SETTLEMENT,  AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM**<br><br>NAME OF JUDICIAL OFFICER:<br><br>    Hon. Larry A. Burns<br><br>COURTROOM NUMBER:<br><br>    9 (Second Floor)<br><br>DATE AND TIME OF HEARING:<br><br>    18 AUGUST 2008<br>    11:15 a.m. |

**07cv1842**

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED   SETTLEMENT,   AND   FOR   RELATED   RELIEF;   SUPPORTING MEMORANDUM – PAGE 1**

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT, on **Monday, 18 AUGUST 2008, at 11:15 a.m.,** or as soon thereafter as the matter can be heard, in **Courtroom Number 9,** the courtroom of the Hon. Larry A. Burns, United States District Judge for the Southern District of California, at the Edward J. Schwartz United States Courthouse, 940 Front Street, San Diego, California 92101, Plaintiffs, Joel M. Cram, and Minh D. Nguyen **(hereinafter collectively "Plaintiffs" and/or "Movants"),** shall bring a motion **(hereinafter the "Motion")** for Order Granting Preliminary Approval of Proposed Settlement, and for Related Relief.

## MOTION

On the grounds set forth in the attached Memorandum of Points and Authorities and the documents referenced therein, Movants hereby move for an Order: (1) Granting Preliminary Approval of Proposed Settlement; (2) provisionally certifying the proposed settlement class; (3) provisionally appointing class counsel and class representatives; (4) approving proposed form of notice; and (5) setting hearing, or hearings, on final approval of proposed settlement, compensation and reimbursement of class counsel, and award of service payments to class representatives.

Dated: 11 June 2008                     Respectfully submitted,

DAVID J. GALLO, ESQ.
**LAW OFFICES OF DAVID J. GALLO**
12702 VIA CORTINA, SUITE 500
DEL MAR, CALIFORNIA 92014-3769
Telephone: (858) 509-3652


               /s/ David J. Gallo
_____
By:     David J. Gallo,
          California Bar No. 127722
          Attorney for Plaintiffs, JOEL M. CRAM, and
          MINH D. NGUYEN, individually, and on
          behalf of all others similarly situated

[EDS-SETTLEMENT_MEM+NOT_MOT_+_MOT_PRELIMINARY_APPROVAL_18AUG08.wpd]

**07cv1842**

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 2**

# TABLE OF CONTENTS

**PAGE**

I.      CONTROLLING LAW.............................................................................................7

II.     SUMMARY OF CLAIMS AND DEFENSES; PROCEDURAL HISTORY......................7

III.    THE PROPOSED SETTLEMENT AGREEMENT............................................................12

IV.     BINDING INTERIM AGREEMENT....................................................................................14

V.      PRELIMINARY APPROVAL SHOULD BE GRANTED....................................................15

VI.     PROVISIONAL CERTIFICATION SHOULD BE GRANTED........................................20

VII.    PROVISIONAL APPOINTMENT OF CLASS COUNSEL AND THE CLASS
        REPRESENTATIVES SHOULD BE GRANTED.................................................................21

VIII.   THIS COURT SHOULD APPROVE THE PARTIES' PROPOSED FROM OF
        NOTICE TO CLASS MEMBERS.......................................................................................21

CONCLUSION..............................................................................................................................22

CERTIFICATE OF ELECTRONIC SERVICE...............................................................................24

**07cv1842**

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 3**

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*Aubry v. Goldhor* (1988), 201 Cal.App.3d 399.................................................................8

*Bell v. Farmers Insurance Exchange* (2001), 87 Cal.App.4th 805.................................17

*Cortez v. Purolator Air Filtration Products Company* (2000), 23 Cal.4th 163..............8

*Hanlon v. Chrysler Corporation,* 150 F.3d 1011 (9th Cir. 1998)..............................16, 20

In re: *Initial Public Offering Securities Litigation,* 243 F.R.D. 79 (S.D.N.Y. 2007).....................16

*Jiminez v. Domino's Pizza, Inc.,* 238 F.R.D. 241 (C.D.Cal. 2006).................................18

*McMorgan & Company v.*
*First California Mortgage Company,* 931 F.Supp. 703 (N.D.Cal. 1996)........................11

In re: *Nasdaq Market-Makers Antitrust Litigation,* 1997 WL 805062 (S.D.N.Y. 1997)...............16

*Ramirez v. Yosemite Water Company* (1999), 20 Cal.4th 785........................................17

*Sav-on Drug Stores, Inc. v. Superior Court* (2004), 34 Cal.4th 319..............................17

*Vinole v. Countrywide Home Loans, Inc.,* 246 F.R.D. 637 (S.D.Cal. 2007)...................18

*Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602 (C.D.Cal. 2005).............................18

In re: *Wells Fargo Home Mortgage*
*Overtime Pay Litigation,* 527 F.Supp. 2d 1053 (N.D.Cal. 2007)....................................18

*Wiegele v. FedEx Ground Package System, Inc.,* 2008 WL 410691 (S.D.Cal. 2008)....................18

### CALIFORNIA STATUTES

Cal.Bus. & Prof.Code, §§ 17200, *et seq.*
**(a/k/a "Unfair Competition Law", and/or "UCL")**........................................................8

Cal.Bus. & Prof.Code, § 17208................................................................................8

Cal.Code Civ.Proc., § 338......................................................................................8

Cal.LaborCode, § 203.........................................................................8, 14, 15, 18, 20

Cal.LaborCode, § 510(a).........................................................................................9

**07cv1842**

NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 4

## TABLE OF AUTHORITIES
### (Continued)

**PAGE**

Cal.LaborCode, § 515(a)...........................................................................................17

Cal.LaborCode, § 515.5(a)(4)...............................................................................8, 17

Cal.LaborCode, § 1194(a)........................................................................................19

Eight-Hour Day Restoration and Workplace Flexibility Act of 1999,
Stats.1999, c. 134 (A.B. 60) **(the "Eight-Hour Day Restoration Act")**...........................9-12, 20

## FEDERAL STATUTES

Title 5, U.S.C., Section 552
**(a/k/a "Freedom of Information Act", and/or "FOIA")**.........................................................10

Title 28, U.S.C., Section 1332(d)(2)...........................................................................8

Title 28, U.S.C., Section 1453(b).............................................................................8

Title 28, U.S.C., Section 1715...............................................................................7

Title 29, U.S.C., Section 207(a)(1)..........................................................................9

Title 29, U.S.C., Section 255(a)............................................................................10

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 23, Fed.R.Civ.P...................................................................................7, 18

Rule 23(a), Fed.R.Civ.P.................................................................................20

Rule 23(b), Fed.R.Civ.P.................................................................................20

Rule 23(b)(1)(A), Fed.R.Civ.P...........................................................................20

Rule 23(b)(2), Fed.R.Civ.P..............................................................................21

Rule 23(b)(3), Fed.R.Civ.P..............................................................................21

Rule 23(b)(3)(D), Fed.R.Civ.P...........................................................................21

Rule 23(c)(2)(B)(i), Fed.R.Civ.P........................................................................22

Rule 23(c)(2)(B)(ii), Fed.R.Civ.P.......................................................................22

**07cv1842**

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 5**

## TABLE OF AUTHORITIES
**(Continued)**

**PAGE**

Rule 23(c)(2)(B)(iii), Fed.R.Civ.P...................................................................................................22

Rule 23(c)(2)(B)(iv), Fed.R.Civ.P...................................................................................................22

Rule 23(c)(2)(B)(v), Fed.R.Civ.P.....................................................................................................22

Rule 23(c)(2)(B)(vi), Fed.R.Civ.P....................................................................................................22

Rule 23(c)(2)(B)(vii), Fed.R.Civ.P...................................................................................................22

Rule 23(e)(2), Fed.R.Civ.P..........................................................................................................7, 15

Rule 23(h), Fed.R.Civ.P...................................................................................................................13

Rule 30(b)(6), Fed.R.Civ.P...............................................................................................................11

## OTHER AUTHORITY

Manual for Complex Litigation, Third, § 30.41 (1995)....................................................................16

**07cv1842**

NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 6

## I.     <u>CONTROLLING LAW</u>

The instant Motion seeks: (1) preliminary approval of a proposed settlement of a proposed class action; (2) provisional certification of the proposed settlement class; (3) provisional appointment of class counsel and class representatives; (4) approval of a proposed form of notice; and (5) the setting of a hearing, or hearings, on final approval of the proposed settlement, compensation and reimbursement of class counsel, and award of service payments to class representatives.

Controlling authority is found at Rule 23 of the Federal Rules of Civil Procedure; Section 3 of this Court's Standing Order; Title 28, U.S.C., Section 1715 (regarding notification to government officials); and the reported decisions cited herein.  The ultimate question to be resolved by the Court upon final approval would be whether the proposed settlement is, "... fair, reasonable, and adequate." (*Cf.:* Rule 23(e)(2), Fed.R.Civ.P.)

## II.     <u>SUMMARY OF CLAIMS AND DEFENSES; PROCEDURAL HISTORY</u>

Plaintiffs Cram and Nguyen were employed by Defendant, Electronic Data Systems Corporation **(hereinafter "EDS"),** in connection with EDS' contract with the United States Department of the Navy related to the Navy – Marine Corps Intranet Project **(hereinafter "NMCI").** During a part of Mr. Cram's employment by EDS, Mr. Cram was employed in the capacity of "Information Security Analyst", and classified by EDS as "exempt" from the protections of California's wage-and-hour laws.  (*See,* accompanying Cram Declaration, at ¶¶ 6, 9.)  During a part of Mr. Nguyen's employment by EDS, Mr. Nguyen was employed in the capacity of "Systems Administrator", and also classified by EDS as "exempt" from the protections of California's wage-and-hour laws.  (*See,* accompanying Nguyen Declaration, at ¶¶ 6, 9.)

Both Mr. Cram and Mr. Nguyen were required to work overtime hours, but were not paid overtime compensation.  (*See,* Cram Declaration, at ¶¶ 7, 9; *see also,* Nguyen Declaration, at ¶¶ 7, 9.) These circumstances were typical among Mr. Cram's and Mr. Nguyen's co-workers.  (*See,* Cram

1  Declaration, at ¶ 10; *see also,* Nguyen Declaration, at ¶ 10.)

2      This action was commenced on 21 August 2007, in a Superior Court of California.  EDS

3  removed this action to this Court on 20 September 2007, in reliance upon Title 28, U.S.C., Sections

4  1332(d)(2) and 1453(b).  Plaintiffs unsuccessfully sought remand to the Superior Court of California.

5      This action is grounded in Plaintiffs' allegation that EDS "misclassified" putative class

6  members as "exempt".  (*See,* Initial Complaint, at ¶ 22.)  Plaintiffs' initial complaint sought

7  certification of a plaintiff class consisting, in general terms, of information systems support personnel

8  employed within California and assigned to the NMCI project.  (*See,* Initial Complaint, at ¶ 25.)  The

9  initially-proposed plaintiff class would have been further limited to persons compensated at less than

10  the software employee exemption rate prescribed by subdivision "(a)(4)" of Section 515.5 of the

11  California Labor Code.[1]  (*See, ibid.*)  Plaintiffs' initial complaint sought recovery of unpaid overtime

12  compensation (both at law and in equity), recovery of prejudgment interest, recovery of "penalty

13  wages" pursuant to Section 203 of the California Labor Code,[2] and injunction against continuing

14  violation of the California Labor Code and regulations promulgated thereunder.

15      EDS answered Plaintiffs' initial complaint prior to the removal.  (*See,* Answer, at Exhibit "2"

16  to Notice of Removal, Docket Entry No. 1, at Pages 32 through 38.)  The only salient defenses

17  asserted by EDS were "payment", and "exemption".  (*See,* Answer to Initial Complaint, at ¶¶ 12, 14.)

18

19      [1]      The alternative class periods proposed in both Plaintiffs' initial complaint, and
    Plaintiffs' FAC, were intended to address the different limitations periods applicable when
20  unpaid wages are sought as equitable restitution, as opposed to as damages.  (*Cf.:* Initial
    Complaint, at ¶¶ 25(a), 25(b).)  In an action at law, the applicable limitations period for recovery
21  of unpaid overtime compensation is three years.  (*See,* Cal.Code Civ.Proc., § 338; *see
    also, Aubry v. Goldhor* (1988), 201 Cal.App.3d 399, 404.)  A superseding four-year limitations
22  period applies in an action for equitable restitution under California's Unfair Competition Law,
    Cal.Bus. & Prof.Code, §§ 17200, *et seq.*  (*See,* Cal.Bus. & Prof.Code, § 17208; *see also, See,
23  Cortez v. Purolator Air Filtration Products Company* (2000), 23 Cal.4th 163, 178-179.

24      [2]      Section 203 penalty wages are sometimes referred to as, "waiting time pay".  In
25  general terms, Section 203 prescribes that, where an employer has, "... willfully fail[ed] to pay
    ...", all compensation due a *former* employee, "... the wages of the employee shall continue as a
26  penalty ...", for a period of thirty (30) days.

27

28  **07cv1842**
    **NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
    PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING
    MEMORANDUM – PAGE 8**

During the pendency of this action, EDS revealed that it had re-classified a number of employees as "non-exempt", after a "voluntary" "self-audit" conducted under the "supervision" of the United States Department of Labor. (*See,* Evans Declaration, *passim,* attached as Exhibit "1" [pages 11-15] to EDS' opposition to Plaintiffs' motion for curative communication, filed 4 January 2008, as Docket Entry No. 70.) The Evans Declaration reported that EDS had paid back overtime to the re-classified persons, "... calculated based on ... a formula approved by ...", the United States Department of Labor. (*See,* Evans Declaration, at ¶ 4.) This raised the question whether the back overtime paid to the re-classified persons who were employed in California was calculated in a manner which complied with California's Eight-Hour Day Restoration and Workplace Flexibility Act of 1999, Stats.1999, c. 134 (A.B. 60) **(hereinafter the "Eight-Hour Day Restoration Act").**

A brief discussion of the salient differences between California law, and federal law, is in order:

Under federal law, overtime compensation is prescribed where a non-exempt employee works in excess of forty (40) hours in any workweek, without regard to the number of hours worked in any particular workday. (*See,* Title 29, U.S.C., Section 207(a)(1).) By contrast, under California's Eight-Hour Day Restoration Act, overtime compensation is prescribed where a non-exempt employee works *either* in excess of forty (40) hours in any workweek, *or* in excess of eight (8) hours in any workday. (*See,* Cal.LaborCode, § 510(a).)

The above-described difference between state and federal law is of particular importance in the case at bar. Both proposed class representatives have testified that their regular work schedules consisted of three (3) twelve-(12)-hour shifts one week, followed by four (4) twelve-(12)-hour shifts the next week (with such two-week pattern repeating). (*See,* Cram Declaration, at ¶ 7; *see also,* Nguyen Declaration, at ¶ 7.) Such work schedules were typical among their co-workers. (*See,* Cram Declaration, at ¶ 8; *see also,* Nguyen Declaration, at ¶ 8.) Calculated under federal law, this would result in:

    a.    zero (0) hours' overtime compensation during the three-workday week (because three

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 9**

1    12-hour workdays equates to a workweek of only 36 hours [*i.e.,* less than 40 hours]);
2    and

3    b.    eight (8) hours' overtime compensation during the four-workday week (because four
4          workdays of 12 hours each equates to a workweek of 48 hours).

5    By contrast, calculated under California law, the same work schedule would result in:

6    a.    twelve (12) hours' overtime compensation during the three-workday week (because
7          each of the three 12-hour workdays exceeds the eight-hour maximum by 4 hours); and

8    b.    sixteen (16) hours' overtime compensation during the four-workday week (because
9          each of the four 12-hour workdays exceeds the eight-hour maximum by 4 hours).

10   Thus, over a two-week pay period, while only eight (8) hours' overtime compensation would be
11   earned under the FLSA, twenty-eight (28) hours' overtime compensation would be earned under
12   California's Eight-Hour Day Restoration Act.

13        In addition to the foregoing, the limitations period applicable to FLSA claims for recovery
14   of unpaid overtime compensation is two (2) years, except that a three-(3)-year limitations period will
15   apply if the FLSA violation was willful.  (*See,* Title 29, U.S.C., Section 255(a).)  Under California
16   law, while an action at law to recover unpaid overtime compensation is subject to a three-(3)-year
17   limitations period, an action for equitable restitution is subject to a superseding four-(4)-year
18   limitations period.  (*See,* Note 1, *supra.*)

19        Plaintiffs have now completed their investigation of EDS' re-classifications and related
20   payments of back overtime.  Plaintiffs had two potential sources of information and evidence
21   regarding EDS' payments of back overtime, *viz.:* (1) discovery propounded upon EDS; and (2) a
22   request issued to the U.S. Department of Labor under the Freedom of Information Act **("FOIA"),**
23   Title 5, U.S.C., Section 552.  In an effort to conduct the most thorough investigation possible,
24   Plaintiffs issued an FOIA request to the U.S. Department of Labor.  (*See,* accompanying Gallo
25   Declaration, at ¶ 17, and Exhibit Page "C" thereto.)  When Plaintiffs' FOIA request was denied,
26   Plaintiffs appealed to the Solicitor of Labor.  (*See, ibid.*)  The Solicitor of Labor rejected Plaintiffs'

27

28   **07cv1842**
     **NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 10**

1    appeal.  (*See, ibid.*)

2          The communications exchanged between EDS and the U.S. Department of Labor were

3    discoverable,[3] and were sought by a request for production of documents.  (*See,* Gallo Declaration,

4    at ¶ 18.)  EDS issued a written discovery response which averred that EDS would, "... produce copies

5    of non-privileged documents reflecting such correspondence ...", and EDS did, in fact, produce at

6    least some documents which appear responsive to such request.  (*See,* Gallo Declaration, at ¶ 18.)

7          On 7 May 2008, Plaintiffs deposed Mr. Michael Evans, who had been designated by EDS

8    pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to testify on EDS' behalf in regard

9    to a broad range of matters relevant to the instant case.  (*See,* Gallo Declaration, at ¶ 19.)  Mr. Evans

10   testified that EDS had issued Job Summary Questionnaires (*i.e.,* job-duty surveys) to the then-

11   currently-employed Systems Administrators to determine whether their actual job duties supported

12   a claim of exemption.  (*See,* Evans testimony, excerpted at Exhibit "D" to Gallo Declaration, at 38:6-

13   13.)  EDS then analyzed the responses to the job-duty surveys, "... many on a case-by-case basis ...",

14   to determine whether the Systems Administrator should be re-classified as "non-exempt".  (*See,*

15   Evans testimony, at 38:12-13.)  Formerly-employed Systems Administrators were retroactively re-

16   classified where the majority of the then-currently-employed Systems Administrators in their work

17   units had been re-classified.  (*See,* Evans testimony, at 40:10-24.)  Mr. Evans testified that EDS'

18   payments of back overtime to the California Systems Administrators were calculated in compliance

19   with California's Eight-Hour Day Restoration Act, but that the back overtime was paid without

20   interest or penalties.  (*See,* Evans testimony, at 41:19 to 43:11.)

21         Mr. Evans testified that EDS' outside counsel (the same law firm which represents EDS in

22   this action) had investigated the classification of the Information Security Analysts, and had re-

23   classified some of them as non-exempt.  (*See,* Evans testimony, at 144:9 to 149:16.)  Mr. Evans

24   testified that EDS' payments of back overtime to the California Information Security Analysts were

25   _____

26        [3]    *See, McMorgan & Company v. First California Mortgage Company,* 931 F.Supp.
     703 (N.D. Cal. 1996).

27

28   **07cv1842**
     **NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
     **PROPOSED   SETTLEMENT,   AND   FOR   RELATED   RELIEF;   SUPPORTING**
     **MEMORANDUM – PAGE 11**

1  calculated in compliance with California's Eight-Hour Day Restoration Act, but that the back

2  overtime was paid without interest or penalties. (*See,* Evans testimony, at 147:10 to 148:3.)

3       At the conclusion of the Evans deposition on 7 May 2008, Plaintiffs' undersigned counsel

4  concluded that no further discovery was required in order for Plaintiffs to evaluate their case for

5  purposes of potential settlement.

6       On 23 May 2008, this Court authorized the filing of Plaintiffs' First Amended Complaint, and

7  the FAC was filed forthwith. (*See,* Docket Entry Nos. 114, 115.) The FAC added an alternative

8  proposed class definition to include all of EDS' California employees who have been re-classified

9  by EDS, but who have yet to receive all overtime due them; the FAC also added a claim for

10 declaratory relief. (*See, ex rel.,* Order, Docket Entry No. 114, at 1:24 to 2:2.)

11 **III.    THE PROPOSED SETTLEMENT AGREEMENT**

12      On 29 May 2008, the parties participated in mediation before the Hon. Herbert B. Hoffman,

13 Judge of the Superior Court of California (Retired). The mediation commenced at 9:00 a.m., and an

14 agreement in principle was not reached until approximately 5:00 p.m. (*See,* Gallo Declaration, at ¶

15 20.) The mediation was conducted at arm's-length, and consisted of a vigorous process of

16 negotiation, including numerous proposals and counter-proposals. (*See,* Gallo Declaration, at ¶ 21.)

17 The mediation resulted in the execution of a proposed settlement agreement **(hereinafter the**

18 **"PSA"),** which was executed at approximately 10:45 p.m. (*See,* Gallo Declaration, at ¶ 22.) A true

19 and correct copy of the PSA is filed separately herewith, and is authenticated at Paragraph 22 of the

20 Gallo Declaration.

21      The PSA would prescribe a settlement class **(hereinafter the "Settlement Class")** consisting

22 of those of EDS' Systems Administrators and Information Security Analysts employed during the

23 Class Period commencing 21 August 2003, and concluding 29 May 2008, who were re-classified by

24 EDS from "exempt" to "non-exempt" in 2007 or 2008 (*i.e.,* the effective date of the re-classifications

25 which are the subject of this action, based upon the Evans Declaration, as well as documents

26

27

28
**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 12**

1  produced on discovery.)  (*See,* PSA, at 3:18 to 4:2.)  (EDS bestows various titles upon its Systems

2  Administrators and Information Security Analysts, which appear to be unrelated to the work actually

3  performed; *see,* Cram Declaration, at ¶ 10; *see also,* Nguyen Declarations, at ¶ 10.)[4]

4       Under the PSA, EDS would pay a Gross Settlement Sum of Nine Hundred Thousand Dollars

5  ($900,000.00), from which EDS would receive credit for any opt-outs, and for class members who

6  fail to file claims.  (*See,* PSA, at 5:21-22, and 8:25-28.)  Subject to Court approval, the PSA would

7  allocate one-third of the Gross Settlement Sum to Plaintiffs' and the Plaintiff Class' statutory claim

8  for attorneys' fees.  (*See,* PSA, at 7:6-12.)  The PSA does not purport to bind the Court to any such

9  allocation, and the Court may approve the PSA independently of its ruling on compensation of Class

10  Counsel. (*See,* PSA, at 15:20-21.) The PSA contemplates that Class Counsel would bring a separate

11  motion for award of compensation (*see,* PSA, at 15:11-22), which would be brought in compliance

12  with subdivision "h" of Rule 23 of the Federal Rules of Civil Procedure.

13       Subject to Court approval, the PSA would allocate service payments of $20,000 to each of

14  the two proposed Class Representatives.  Again, the PSA does not purport to bind the Court to any

15  such allocation, and the Court may approve the PSA independently of its ruling on compensation of

16  the Class Representatives.

17       Also deducted from the Gross Settlement Sum would be expenses of administration, which

18  EDS estimates to be approximately three percent (3%).  (*See,* PSA, at 7:13-17.)[5]

19       After payment of: (a) such fees and costs as the Court may award to Class Counsel; (b) such

20  service payments as the Court may award to the Class Representatives; and (c) expenses of

21  administration, the Net Settlement Fund to be distributed to Class Members would be in excess of

22  

23       [4]     These are: Systems Administrator (34060); Systems Administrator Advanced
24  (34070): Information Security Analyst (33700); Information Security Analyst Advanced
   (33710); and Information Security Analyst Senior (33720).

25       [5]     EDS has recently retained the proposed Claims Administrator, Rust Consulting,
26  in another matter, and EDS has represented that it is familiar with that particular company's
   charges.

27  

**07cv1842**

28  **NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING
MEMORANDUM – PAGE 13**

1   Five Hundred Thirty Thousand Dollars ($530,000.00) (before credits to EDS for any opt-outs or non-

2   filers).[6]

3          Under the PSA, the Net Settlement Fund would be allocated two-thirds to claims for overtime

4   compensation and interest **("Overtime/Interest Fund"),** and one-third to claims for Section 203

5   penalty wages **("Waiting Time Fund").** (*See,* PSA, at 7:25-27.) The Overtime/Interest Fund would

6   be divided among all Class Members who file claims in proportion to their respective lengths of

7   tenure in the Systems Administrator and/or Information Security Analyst position. (*See,* PSA, at 8:1-

8   15.) The Waiting Time Fund would be divided among the Class Members who ceased to be

9   employed by EDS prior to 29 May 2008,[7] excluding any of such persons whose claims under Section

10  203 were extinguished by the judgment in the *Vitt* Class Action. (*See,* PSA, at 8:16-24; *see*

11  *also,* Stipulation, lodged at Docket Entry No. 100.)

12         The PSA would effect a release by the Plaintiff Class of all claims, "... which relate to any

13  allegations or Claims asserted in the Complaint or Amended Complaint ... [including] claims made

14  at any time in the Action or arising out of or based upon the allegations made in the Action, and

15  includ[ing] all claims related to wages or overtime, and related interest, penalties and remedies

16  thereon ...", which accrued during the Class Period. (*See,* PSA, at 16:6-7 and 16:11-13.)

17  **IV.   BINDING INTERIM AGREEMENT**

18         In accordance with the usual practices of Plaintiffs' undersigned counsel, Plaintiffs required

19  that EDS enter into a binding interim agreement **(hereinafter the "BIA")** to govern the parties'

20  conduct between the date of execution of the PSA, and the date on which the Court rules on final

21  approval of the PSA. (The BIA is reproduced at Exhibit "E" to the Gallo Declaration, and is

22

23  ────────────

24         [6]     This figure is prior to wage tax withholdings required by law. The $530,000.00

25  figure accounts for the fact that Plaintiffs' Counsel's gross disbursements were less than the
    $12,000.00 reserved under the PSA. (*See,* Gallo Declaration, at ¶ 23.)

26         [7]     Recall that, under the express terms of Section 203, only former employees may

27  become eligible to recover Section 203 penalty wages.

28  **07cv1842**
    **NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
    **PROPOSED   SETTLEMENT,   AND   FOR   RELATED   RELIEF;   SUPPORTING**
    **MEMORANDUM – PAGE 14**

authenticated at Paragraph 24 thereof.)  The BIA authorizes the parties to disclose to the Court such information regarding the process of negotiations (without disclosing specific details, figures, arguments, positions, or proposals) leading to the entry of the PSA as may be reasonably necessary to facilitate determination by the Court as to whether the PSA should receive preliminary approval, and/or final approval.  (*See,* BIA, at § 2, at Exhibit "E" to Gallo Declaration.)  During the course of the mediation, EDS made certain representations regarding its maximum potential exposure, which were communicated through the Mediator.  The BIA required that EDS provide a declaration of counsel: (a) describing and quantifying EDS' prior payments of back overtime to Class Members; (b) providing a good faith estimate of the magnitude of EDS' maximum potential exposure on the Plaintiff Class' disputed claims for overtime compensation, Section 203 penalty wages, and interest (with each stated separately); (c) providing a narrative description generally describing the method by which each such estimate was derived; (d) stating the estimated total number of Class Members; and (e) stating the estimated total number of Class Members who had ceased to be employed by EDS as of 29 May 2008.  (*See,* BIA, at § 3, at Exhibit "E" to Gallo Declaration.)

EDS timely performed its obligation arising under Section 3 of the BIA, and the Declaration of Gregory V. Mersol, Esq., has been filed in support of the instant Motion.

## V.  PRELIMINARY APPROVAL SHOULD BE GRANTED

As stated above, the ultimate question to be resolved by the Court upon final approval would be whether the proposed settlement is, "... fair, reasonable, and adequate."  (*Cf.:* Rule 23(e)(2), Fed.R.Civ.P.)  A motion for ***preliminary*** approval should be granted where the proposed settlement falls within the range of possible approval:

> "Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'  The court first must review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms.[]  'Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 15**

representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted'."

In re: *Initial Public Offering Securities Litigation,* 243 F.R.D. 79, 87 (S.D.N.Y. 2007), *quoting,* In re: *Nasdaq Market-Makers Antitrust Litigation,* 1997 WL 805062 (S.D. N.Y. 1997), *citing, in turn,* Manual for Complex Litigation, Third, § 30.41 (1995).

At a final fairness hearing, this Court would be required to consider the totality of the following factors:

" ... the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant [not applicable in the case at bar]; and the reaction of the class members to the proposed settlement."

*Hanlon v. Chrysler Corporation,* 150 F.3d 1011, 1026 (9th Cir. 1998). (Citations omitted.) A court is to conduct, "... a more probing inquiry ...", where a pre-certification settlement is proposed, to guard against the, "... dangers of collusion between class counsel and the defendant ...", and to satisfy, "... the need for additional protections when the settlement is not negotiated by a courtdesignated class representative." *Hanlon v. Chrysler,* 150 F.3d at 1026.

In the case at bar, the PSA was negotiated through a vigorous, adversarial, non-collusive process, with almost all communications relayed through an experienced mediator (who is a highly-regarded retired judicial officer), and with all communications conducted in the presence of such mediator through and including the time the final material terms of the PSA were agreed upon. (*See,* Gallo Declaration, at ¶ 25.)[8]

The strength of the Plaintiffs' case, as to any particular Class Member, is very high. Plaintiffs

---

[8] The Mediator and all parties agreed that the Mediator's presence was not required during the preparation of the settlement documentation, which commenced at approximately 1800 hours, and concluded at approximately 2245 hours. (*See,* Gallo Declaration, at ¶ 26.) The terms of the PSA which was ultimately executed at approximately 2245 hours were exactly those which had been agreed upon by 1700 hours. (*See,* Gallo Declaration, at ¶ 26.)

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 16**

are of the view that the mere fact that EDS has itself determined that any particular person's classification should be changed from "exempt" to "non-exempt" constitutes powerful evidence of misclassification.  (EDS would presumably disagree.)  "[T]he assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption."  *Sav-on Drug Stores, Inc. v. Superior Court* (2004), 34 Cal.4th 319, 338.  (Citation, int. quot. mks., and attrib. omitted.)  "[E]xemptions from statutory mandatory overtime provisions are narrowly construed."  *Ramirez v. Yosemite Water Company* (1999), 20 Cal.4th 785, 794.  In the case at bar, it is difficult to imagine any basis for either of the two potential exemptions which might possibly apply to computer industry employees paid less than the software employee exemption rate prescribed by subdivision "(a)(4)" of Section 515.5 of the California Labor Code.  (*Cf.*: Cal.LaborCode, § 515(a), authorizing exemptions for *bona fide* "administrative" and "executive" personnel.)  Computer employees who perform production work are not executives, and they are not administrative employees.  *Cf.: Bell v. Farmers Insurance Exchange* (2001), 87 Cal.App.4th 805, 809-829 (Twenty-page discussion of the meaning of "administrative", affirming summary adjudication that plaintiff class of insurance claims representatives was, as a matter of law, not "administrative").

The expense and complexity of continued litigation would be substantial, militating strongly in favor of settlement.  As for the likely duration of further litigation, this Court is in the best position to assess the date by which a two-week trial could have been conducted.  Plaintiffs and their undersigned counsel would have been ready for trial by not later than mid-2009.

The risk of maintaining class action status throughout the trial militates in favor of the proposed settlement.  The California Supreme Court has confirmed the power of California trial courts to certify plaintiff classes in "misclassification" cases in the face of employers' arguments that the circumstances of each employee's employment must be separately analyzed to determine whether the particular employee was properly classified as exempt.  *See, Sav-on Drug Stores, supra.* However, some reported decisions by federal courts sitting within California may be construed to

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 17**

indicate that certification of "misclassification" cases under Rule 23 of the Federal Rules of Civil Procedure may be more difficult to obtain and/or maintain than would be the case under the procedural law of California. *See, e.g., Vinole v. Countrywide Home Loans, Inc.,* 246 F.R.D. 637, 640-641 (S.D. Cal. 2007), *see also, Jiminez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 253 (C.D. Cal. 2006). Other reported – and unreported – decisions by federal courts sitting within California indicate that certification of "misclassification" cases under Rule 23 is obtainable, if a bit more challenging. *See, Wiegele v. FedEx Ground Package System, Inc.,* 2008 WL 410691 (S.D. Cal. 2008); *see also,* In re: *Wells Fargo Home Mortgage Overtime Pay Litigation,* 527 F.Supp. 2d 1053 (N.D. Cal. 2007); *see also, Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602 (C.D. Cal. 2005).

The amount offered in settlement is fair, reasonable, and adequate. The Mersol Declaration avers that there are 268 members of the proposed settlement class, and that EDS' maximum potential liability to Class Members for unpaid overtime would be only approximately $500,000, because EDS has already paid out $3.4 million in back overtime to Class Members. (*See,* Mersol Declaration, at ¶ 21.) The Mersol Declaration further avers that EDS' maximum potential liability to Class Members for interest would be approximately $700,000. (*See,* Mersol Declaration, at ¶ 21.) (Note that interest would have accrued not only in relation to the overtime which presently remains unpaid, but also as to the $3.4 million in back overtime which EDS has already paid out.) The Mersol Declaration further avers that EDS' maximum potential liability to Class Members for Section 203 penalty wages would be approximately $700,000. (*See,* Mersol Declaration, at ¶ 21.)

As stated above, under the PSA, in excess of $530,000.00 would be paid out to Class Members (before credits to EDS for any opt-outs or non-filers). Thus, the amount offered in settlement would exceed the $500,000.00 principal amount of the claims of the Plaintiff Class, even after deduction of all costs and attorneys' fees which would be requested. Because Plaintiffs and their counsel negotiated the highest settlement amount which they were able to obtain, Plaintiffs' choice was between settlement on the one hand, and continuing to litigate for penalties and interest on the other hand.

For the reasons discussed above, the extent of discovery completed is adequate for purposes of pre-certification settlement.  Formal discovery is also supplemented by the Mersol Declaration.

The experience and views of counsel are as follows:  Plaintiffs' undersigned counsel has been continuously engaged in the practice of law for over twenty-two years, and is one of the only approximately 1 out of 1,000 California attorneys recognized by the State Bar of California as a legal specialist in civil trial advocacy.  (*See,* Gallo Declaration, at ¶¶ 8-9.)  Plaintiffs' undersigned counsel is an experienced class action trial attorney, having been approved as class counsel in several class actions in recent years, and having successfully tried two class action cases to judgment in recent years.  (*See,* Gallo Declaration, at ¶¶ 12-15.)  Plaintiffs' undersigned counsel has dedicated a substantial portion of his practice since 2000 to the prosecution of civil actions against employers who fail to comply with California's overtime laws.  (*See,* Gallo Declaration, at ¶ 15.)  In recent years, Plaintiffs' undersigned counsel has prevailed as sole class counsel, or chief counsel, in two jury trials seeking recovery of unpaid overtime compensation.  (*See,* Gallo Declaration, at ¶ 15.)

It is the view of Plaintiffs' undersigned counsel that most employees and former employees of a company would prefer to receive the principal amount of the overtime due them without delay, rather than to wait for litigation to be concluded in the hope of additional recovery in the form of interest and penalties.  It is the view of Plaintiffs' undersigned counsel that most employees and former employees of a company would not desire to assume the risk of denial of class certification, except where such risk is negligible.  It is the view of Plaintiffs' undersigned counsel that pre-certification settlements are actually superior to post-certification settlements, because any class member who is not satisfied with the amount offered in settlement may simply opt out and prosecute his or her own action.  This is especially true with respect to actions to recover unpaid overtime compensation under California law, because California law confers upon the employee the unidirectional right to recover attorneys' fees.  (*See,* Cal.LaborCode, § 1194(a).)  This enables a person who chooses to opt out of a pre-certification settlement to prosecute his or her individual claim for unpaid overtime compensation in a cost-effective manner.  Further, even persons who may

**07cv1842**
**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 19**

1  choose to opt out of a pre-certification settlement receive benefit from it, because court-ordered

2  notices will inform such persons of the existence of claims of which they might not have been aware.

3       The reaction of the class members to the proposed settlement cannot be evaluated until the

4  time of the final fairness hearing.

5       For the foregoing reasons, it appears the *Hanlon v. Chrysler* criteria for final approval are

6  likely satisfied, and this Court should grant preliminary approval of the PSA.

7  ## VI.    PROVISIONAL CERTIFICATION SHOULD BE GRANTED

8       The criteria of subdivision "a" of Rule 23 are present.  The settlement class of 268 persons

9  is sufficiently numerous that joinder of all members would be impracticable.  Common questions of

10  law include the proper method of calculation of overtime compensation due to salaried employees

11  under California's Eight-Hour Day Restoration Act; the criteria for the claimed exemptions under

12  California law; and the proper method of calculation of Section 203 penalty wages.  Common

13  questions of fact include EDS' policies and procedures regarding classification, as well as the job

14  duties and responsibilities of the Systems Administrator and Information Security Analyst positions.

15       The claims of the proposed Class Representatives are typical of the claims of the proposed

16  settlement class.  (*See,* Cram Declaration, at ¶ 10; *see,* Nguyen Declaration, at ¶ 10.)  The proposed

17  Class Representatives will fairly and adequately protect the interests of the proposed settlement class.

18  (*See,* Cram Declaration, at ¶ 11; *see,* Nguyen Declaration, at ¶ 11.)

19       Although only one of the three sub-parts of subsection "b" of Rule 23 need be established,

20  all are present.  The prosecution of separate actions by or against individual class members would

21  create a risk of inconsistent or varying adjudications with respect to individual class members that

22  would establish incompatible standards of conduct for EDS.  This results from the possibility that up

23  to 268 separate tribunals could interpret the criteria of any claimed exemption and apply same to the

24  common circumstances of EDS' operations.  (*Cf.:* Rule 23(b)(1)(A), Fed.R.Civ.P.)  Recall that the

25  FAC seeks both injunctive and declaratory relief.  Although the PSA does not prescribe injunctive

26

27

28  **07cv1842**
**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 20**

1    or declaratory relief, it is nevertheless true that EDS has refused to act on grounds that apply

2    generally to the proposed settlement class, so that final injunctive relief and/or corresponding

3    declaratory relief would have been appropriate respecting the class as a whole, had the necessity for

4    same not been obviated by the proposed settlement.  (*Cf.:* Rule 23(b)(2), Fed.R.Civ.P.)  It is also

5    appears that the questions of law and fact common among class members predominate over any

6    questions which might affect only individual members; a class action is superior to other available

7    methods for fairly and efficiently adjudicating the controversy, because there are no alternatives other

8    than an unwieldy mass action, or a large number of separate cases.  (*Cf.:* Rule 23(b)(3), Fed.R.Civ.P.)

9    In the context of a settlement, there would be no difficulty in management of the action.  (*Cf.:* Rule

10   23(b)(3)(D), Fed.R.Civ.P.)

## VII.   PROVISIONAL APPOINTMENT OF CLASS COUNSEL AND THE CLASS REPRESENTATIVES SHOULD BE GRANTED

The accompanying Gallo Declaration establishes that Plaintiffs' undersigned counsel would adequately represent the proposed settlement class.  (*See,* Gallo Declaration, *passim.*)

The accompanying Cram Declaration, and the accompanying Nguyen Declaration, establish that the proposed Class Representatives have acted in good faith to advance the interests of the proposed settlement class, and that they would adequately represent the proposed settlement class. (*See,* Cram Declaration, at ¶ 11; *see,* Nguyen Declaration, at ¶ 11.)

Accordingly, this Court should provisionally appoint Plaintiffs' undersigned counsel as Class Counsel, and should provisionally appoint Plaintiffs as Class Representatives.

## VIII.   THIS COURT SHOULD APPROVE THE PARTIES' PROPOSED FROM OF NOTICE TO CLASS MEMBERS

The parties have agreed upon a proposed form of notice, and a proposed claim form, which are found at Bates-numbered pages 000033 through 000041 of the PSA.  The parties' proposed form of notice fairly apprizes Class Members of the nature of the action, their rights, and the terms of the proposed settlement.  (*See,* Notice Section 1, at Bates-numbered page 000033 of the PSA; *cf.:* Rule

**07cv1842**

NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 21

23(c)(2)(B)(i), Fed.R.Civ.P.; *see also,* Notice Section 7, at Bates-numbered page 000035 of the PSA; *cf.:* Rule 23(c)(2)(B)(ii), Fed.R.Civ.P.; *see also,* Notice Section 1, at Bates-numbered page 000033 of the PSA; *cf.:* Rule 23(c)(2)(B)(iii), Fed.R.Civ.P.; *see also,* Notice Section 13, at Bates-numbered page 000036 of the PSA; *cf.:* Rule 23(c)(2)(B)(iv), Fed.R.Civ.P.; *see also,* Notice Section 9, at Bates-numbered pages 000035-000036 of the PSA; *cf.:* Rule 23(c)(2)(B)(v), Fed.R.Civ.P.; *see also,* Notice Section 9, at Bates-numbered pages 000035-000036 of the PSA; *cf.:* Rule 23(c)(2)(B)(vi), Fed.R.Civ.P.; *see also,* Notice Section 17, at Bates-numbered page 000037 of the PSA; *cf.:* Rule 23(c)(2)(B)(vii), Fed.R.Civ.P.)

Accordingly, this Court should approve the parties' proposed form of notice, and proposed claim form, which are found at Bates-numbered pages 000033 through 000041 of the PSA.

## **CONCLUSION**

WHEREFORE, Plaintiffs request that this Court enter an Order: (1) Granting Preliminary Approval of Proposed Settlement Agreement; (2) provisionally certifying the Proposed Settlement Class; (3) provisionally appointing Class Counsel and the Class Representatives; (4) approving the proposed form of notice and claim form found at Bates-numbered pages 000033 through 000041 of the PSA; and (5) setting a hearing, or hearings, on final approval of proposed settlement, compensation and reimbursement of class counsel, and award of service payments to class representatives.

///
///
///
///
///
///
///

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 22**

Dated: 11 June 2008

Respectfully submitted,

DAVID J. GALLO, ESQ.
**LAW OFFICES OF DAVID J. GALLO**
12702 VIA CORTINA, SUITE 500
DEL MAR, CALIFORNIA 92014-3769
Telephone: (858) 509-3652

_____/s/ David J. Gallo_____
By:    David J. Gallo,
California Bar No. 127722
Attorney for Plaintiffs, JOEL M. CRAM, and
MINH D. NGUYEN, individually, and on
behalf of all others similarly situated

[EDS-SETTLEMENT_MEM+NOT_MOT_+_MOT_PRELIMINARY_APPROVAL_18AUG08.wpd]

**07cv1842**

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 23**

## CERTIFICATE OF ELECTRONIC SERVICE

I, DAVID J. GALLO, hereby certify that, upon electronic filing hereof, I have effected electronic service of the preceding document upon all parties who have appeared in the above-captioned civil action, in the manner authorized by CivLR 5.4(c).


_____/s/ David J. Gallo_____
DAVID J. GALLO

[EDS-SETTLEMENT_MEM+NOT_MOT_+_MOT_PRELIMINARY_APPROVAL_18AUG08.wpd]

**07cv1842**

**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND FOR RELATED RELIEF; SUPPORTING MEMORANDUM – PAGE 24**